UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL KNIGHT, as Chapter 11 Trustee for Upper Midwest Sealcoat Manufacturing, LLC, | ) ) ) |
| Plaintiff, | ) 15 C 5960 ) ) Judge Feinerman |
| vs. | ) ) |
| DJK REAL ESTATE GROUP, LLC and DJK REAL ESTATE GROUP-BURR RIDGE, LLC, | ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

In this diversity suit, Upper Midwest Sealcoat Manufacturing alleges that DJK Real Estate Group ("DJK") and DJK Real Estate Group-Burr Ridge ("DJK-Burr Ridge") violated the terms of a commercial real estate lease by allowing Westfield Insurance Company, Defendants' insurer, to sue Upper Midwest in the Circuit Court of DuPage County, Illinois, for damages arising from its use of the leased property. Doc. 1. Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, to abstain under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), pending the resolution of the state court suit, *Westfield Insurance Company as subrogee of DJK Real Estate Group, LLC v. Upper Midwest Sealcoat Manufacturing, LLC*, 2014 L 929 (Cir. Ct. DuPage Cnty., Ill. filed Aug. 28, 2014) (state court complaint reproduced at Doc. 1-2). Doc. 6.

After the motion was fully briefed, Upper Midwest informed the court that a bankruptcy trustee had been appointed in its pending Chapter 11 bankruptcy case, *In re Upper Midwest Sealcoat Manufacturing, LLC*, No. 15-42363 (Bankr. D. Minn. filed July 1, 2015). Doc. 20.

1

That resulted in the trustee, rather than Upper Midwest, being the real party in interest in this suit. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[T]he estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims."); *Conticommodity Servs., Inc. v. Ragan*, 826 F.2d 600, 602 (7th Cir. 1987) (holding that the "real party in interest was the trustee in bankruptcy," reasoning that "Ragan's potential liability to Conticommodity on its claim is a potential liability of the bankrupt estate"). Accordingly, pursuant to Rule 17(a)(3), the court provided the trustee the opportunity "to ratify, join or be substituted into the action." Doc. 23. Michael Knight, the trustee, petitioned to be substituted as plaintiff, Doc. 24, and the court granted the petition, Doc. 25.

Although Knight has replaced Upper Midwest as the plaintiff, for ease of exposition the court where appropriate will continue to refer to the plaintiff as "Upper Midwest." For the following reasons, Defendants' motion to dismiss is denied, their motion to abstain is granted, and the case is stayed pending resolution of the state court suit.

**Background**

In considering a Rule 12(b)(6) motion or a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, the court must accept as true the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Upper Midwest's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Upper Midwest's brief opposing dismissal, so long as those additional facts are "consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714

F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Upper Midwest as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

In March 2011, Upper Midwest as lessee entered into a three-year lease with DJK as lessor for an industrial building in Burr Ridge, Illinois. Doc. 1 at ¶ 4; Doc. 1-1. The lease contained this subrogation provision:

> g. <u>Subrogation</u>: Landlord and Lessee shall each obtain from their respective insurers under all policies of fire, theft, public liability, workers' compensation and other insurance maintained by either of them at any time during the term hereof insuring or covering the Premises, a waiver of all rights of subrogation which the insurer of one party might have, if at all, against the other party.

Doc. 1-1 at 3. In other words, Upper Midwest and DJK agreed that the lease would not implicate their respective liability insurers: any insurance claims arising from the lease would be paid by their insurers in accordance with the insurance policies, with no recourse to suing the other party to the lease.

On November 15, 2012, the leased property caught fire. Doc. 1 at ¶ 8. On September 17, 2014, Westfield, DJK's insurer and as its subrogee, sued Upper Midwest and its employee Michael Salvato in state court, seeking $523,426.00 for repairs due to damage from the fire. *Id.* at ¶¶ 9-10; Doc. 1-2. Westfield alleged that "Upper Midwest permitted an employee, Michael Salvato, to reside at [the property], in contravention of the [property's] purpose" without seeking prior permission from DJK. Doc. 1-2 at ¶ 16; Doc. 7 at 3. Westfield claimed that the fire resulted from Salvato's discarding lit cigarette butts "onto pallets of cardboard boxes." Doc. 1-2 at ¶ 20; Doc. 7 at 3. Upper Midwest answered with nine affirmative defenses, three of which alleged that the lease's subrogation provision did not permit Westfield to sue Upper Midwest for the damages arising from the fire. Doc. 7 at 3-4; Doc. 7-1 at 9-14. Upper Midwest also moved

3

to dismiss, arguing that DJK had waived all rights of subrogation that Westfield might otherwise have had against Upper Midwest, that the lease relieved Upper Midwest from responsibility "even if the fire was purportedly caused by Upper Midwest's own negligence," and that under Illinois law, Upper Midwest's payment of rent to DJK rendered it a co-insured entity against which Westfield could not subrogate. Doc. 7-2. The state court denied the motion without prejudice, reasoning that questions of fact precluded the court at the pleading stage from determining whether Upper Midwest's actions had rendered the lease invalid and therefore whether the lease's subrogation provision precluded the suit. Doc. 7-4; Doc. 15-2 at 9-10.

On July 7, 2015, Upper Midwest filed the present suit against Defendants, alleging breach of contract and promissory estoppel and seeking damages in the amount of "all costs and expenses, including reasonable attorneys' fees" incurred, and "any settlement or judgment" that Upper Midwest is required to pay, in the state court case. Doc. 1 at 7. After moving to dismiss, Doc. 6, Defendants informed the court that Upper Midwest had filed a petition for bankruptcy in the District of Minnesota on July 1, 2015, six days before it filed this suit. Doc. 10 at ¶¶ 1-2; Doc. 10-1; Doc. 10-2; Doc. 17 at 1-2. On September 10, 2015, Westfield obtained an unopposed order from the bankruptcy court lifting the automatic stay to allow it to proceed in the state case to the extent of Upper Midwest's insurance proceeds. *Id*. at 2; Doc. 17-4; Doc. 17-6. As noted above, Knight subsequently was appointed as Upper Midwest's bankruptcy trustee and has been substituted in this case as the party plaintiff.

## Discussion

### I. Motion to Dismiss

Defendants essentially set forth three grounds for dismissal. First, they contend that because Upper Midwest pegs its damage claim to the outcome of the state court case, it is

seeking an "advisory opinion" rather than presenting an "actual controversy" ripe for resolution. Doc. 7 at 7-9. This argument fails to persuade. As Upper Midwest correctly notes, it "has been named a defendant in a subrogation action filed by Defendants' insurer/subrogee, and [it] has already incurred significant costs and fees in defending such an action." Doc. 15 at 14. In short, while the extent of Upper Midwest's damages may rest on the outcome of the state court case, Upper Midwest has already suffered and continues to suffer harm through Defendants' alleged breach of the lease agreement. That is sufficient to establish an actual controversy ripe for resolution. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005) (holding that "to show a [contract] dispute," the plaintiff "must show that [the defendant] has acted, or has threatened to act, in a manner inconsistent with [the plaintiff's] interpretation of the contract") (internal quotation marks omitted).

Second, Defendants argue that this case does not fall within the diversity jurisdiction, 28 U.S.C. § 1332(a), because the amount in controversy is less than $75,000. Doc. 7 at 7. "The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that … the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (footnotes omitted); *see also Lu Junhong v. Boeing Co.*, 792 F.3d 805, 815 (7th Cir. 2015) ("Jurisdictional allegations control unless it is legally impossible for them to be true.") (citing *St. Paul Mercury*, 303 U.S. at 289). The Seventh Circuit has instructed:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. … Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of

5

> complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

*Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 543 (7th Cir. 2006); *see also Bloomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011); *LM Ins. Corp. v. Spaulding Enters. Inc.,* 533 F.3d 542, 547 (7th Cir. 2008). "The jurisdictional minimum in diversity cases is … the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) ("[T]he jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief.").

Because Upper Midwest seeks in this suit to recover the value of a potential adverse state court judgment that could exceed $500,000, it easily meets the jurisdictional minimum. The possibility that Upper Midwest will prevail in state court does not undermine this conclusion. *See Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (1997) ("[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of jurisdiction."). Nor, contrary to Defendants' contention, Doc. 7 at 8, does the state court's denial without prejudice of Upper Midwest's motion to dismiss preclude enforcement of the lease's subrogation provision. The state court did not rule definitively that the subrogation provision did not apply; it held only that further factual development was needed. Doc. 15-2 at 9-10. In any event, claim preclusion under Illinois law applies only if "there was a final judgment on the merits," *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 728 (7th Cir. 2014) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998)), and there has been nothing of the sort here.

6

Third, Defendants contend that because Upper Midwest is bankrupt, and because Westfield may in the state case proceed only to the extent of Upper Midwest's liability insurance coverage, Upper Midwest itself "cannot claim any damages resulting from the State Case" and so "does not have a cognizable claim for relief." Doc. 17 at 10. But Upper Midwest does have potential damages: as it reported in open court, its liability insurer is proceeding under a reservation of rights, which could allow the insurer to pursue Upper Midwest later—by filing a claim in the bankruptcy proceeding or, if that proceeding is dismissed, seeking recovery directly against Upper Midwest—for the sums incurred defending the state court suit or paying any judgment. *See In re Consolidated Indus. Corp.*, 360 F.3d 712, 717 (7th Cir. 2004). Moreover, as a still-extant (if insolvent) entity, Upper Midwest has "assets that a bankruptcy trustee might seek to preserve against … claimants or creditors." *Old Ben Coal Co. v. Office of Workers' Comp. Programs*, 476 F.3d 418, 419-420 (7th Cir. 2007). Furthermore, a loss in state court could appear as an adjustment on Upper Midwest's loss ratio for insurance purposes. Finally, "[t]he general rule in federal court … that if an insurer *has paid* the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a)," *Krueger v. Cartwright*, 996 F.2d 928, 932 (7th Cir. 1993) (emphasis added), does not apply here because Upper Midwest's insurer has not yet paid any claim on Upper Midwest's behalf.

## II.    *Colorado River* Motion

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Colorado River*, 424 U.S. at 818). The Supreme Court "has cautioned that abstention is appropriate only in 'exceptional

circumstances,' and has also emphasized that federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (quoting *Colorado River*, 424 U.S. at 813, 817). In determining whether to abstain, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks omitted).

The *Colorado River* analysis has two steps. First, the court "inquire[s] whether the concurrent state and federal proceedings are parallel." *Caminiti*, 962 F.2d at 700. If the proceedings are parallel, the court then weighs ten non-exclusive factors to determine whether abstention is proper. *Id*. at 701.

### A. Whether the Federal and State Cases Are Parallel

State and federal proceedings need not be identical to be parallel. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011) ("[F]or *Colorado River* purposes … [p]recisely formal symmetry is unnecessary."). Rather, proceedings are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id*. at 498-99 (internal quotation marks omitted). Put another way, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). "Any doubt

8

regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins*, 644 F.3d at 499 (internal quotation marks omitted).

Here, the state and federal cases involve substantially the same parties. Upper Midwest's adversary in state court is Westfield, and its adversaries here are DJK and DJK-Burr Ridge. Westfield's interests in state court are coterminous with DJK's interests here, for "[w]hen proceeding by subrogation, the subrogee stands in the place of one whose claim he has paid." *United States v. California*, 507 U.S. 746, 756 (1993); *see also Emp'rs Ins. of Wausau v. James McHugh Constr. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998) (defining subrogation as "substitution of one person in the place of another with reference to a lawful claim … so that he who is substituted succeeds to the rights of the other in relation to the … claim, and its rights, remedies, or securities"); *Nw. Nat'l Ins. Co. of Milwaukee v. Lutz*, 71 F.3d 671, 674 (7th Cir. 1995) (Illinois law) ("As the Bank's subrogee, Northwestern stands in the same position as the Bank and can enforce the rights and claims that the Bank has against Lutz."). And Upper Midwest's claims against DJK-Burr Ridge here are derivative of its claims against DJK. DJK-Burr Ridge is present only as a related entity to DJK; despite the complaint's references to "DJK and/or DJK Burr Ridge" as the lessor, *e.g.*, Doc. 1 at ¶ 6, the lease itself nowhere mentions DJK-Burr Ridge. Doc. 1-1. Thus, if DJK is not liable, it is inconceivable that DJK-Burr Ridge could be liable.

Salvato, Upper Midwest's employee, is a party in the state case but not here. But Westfield's claims against Salvato in state court are derivative of its claims against Upper Midwest, and they run parallel to the dispute here between DJK (Westfield's subrogor) and Upper Midwest (Salvato's employer). *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985) ("The only apparent basis for the Villasenors' claim is their status as the sole shareholders and owners of Lumen. Their interest in the outcome of the law suit is the same

9

as that of their company. … As to Cole, its liability appears to be premised solely on its status as Valparaiso's agent."); *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 22-23 (1st Cir. 2010) (finding parallelism under *Colorado River* where a party in the state case was an heir to an estate that was the plaintiff in the federal case, even though the heir was not a party in the federal case); *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required. … This principle is especially apposite in the instant matter, where the interests of both the named plaintiffs … are congruent, notwithstanding the nonidentity of the named parties.") (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)) (internal quotation marks omitted). Moreover, counsel for Upper Midwest and Salvato in the state case is the same as counsel for Upper Midwest here, and counsel for Westfield in the state case is the same as counsel for Defendants here, Doc. 17 at 5, which provides further confirmation, though none is needed, that the parties in both suits are substantially the same. *See Romine*, 160 F.3d at 338, 340 (noting when discussing *Colorado River* parallelism that "Plaintiffs … are represented by the same counsel" in the state and federal cases); *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1204 (D. Kan. 2004) (in finding parallelism, noting that "[t]he same law firm represents HCRA in federal court and its affiliate in state court").

It bears mention that Upper Midwest chose which parties would be named in federal court—suing DJK and DJK-Burr Ridge rather than Westfield, and leaving Salvato out of the case—and Upper Midwest by its unilateral choice cannot destroy parallelism. *See Freed v. JPMorgan Chase Bank, N.A.*, 756 F.3d 1013, 1020 (7th Cir. 2014) ("[T]he parallel nature of the [federal and state] actions cannot be destroyed simply by tacking on a few more defendants.") (quoting *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004)); *Lumen Constr.*, 780 F.2d at 695. "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple

10

expedient of naming additional parties. … [I]ts impact cannot be obliterated by the stroke of a pen." *Lumen Constr.*, 780 F.2d at 695; *see also Freed*, 756 F.3d at 1020. Under the present circumstances—where Westfield proceeds in the state suit as a subrogee of DJK, where DJK-Burr Ridge's liability here is derivative of DJK's, and where Salvato's absence here is Upper Midwest's doing—the state and federal suits involve substantially the same parties.

The two suits involve "substantially the same issues" as well. *Adkins*, 644 F.3d at 498. Both arise from the same transaction and occurrence—the lease and the fire—and revolve around the same legal issues. Upper Midwest's state court affirmative defenses are mirror images of its federal claims: in state court, Upper Midwest asserts that the lease's subrogation provision precludes Westfield's suit and frees it from liability for the fire, Doc. 7-1 at 9-11, 13-14, while here Upper Midwest seeks damages in the amount of the costs and fees incurred and any judgment imposed in state court as a result of DJK's failure to adhere to and enforce the subrogation provision, Doc. 1 at 7. Both cases turn on the enforceability of the subrogation provision, and thus "will be resolved largely by reference to the same evidence." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752-53 (7th Cir. 2006). Given this, the state and federal suits are parallel for *Colorado River* purposes.

In arguing to the contrary, Upper Midwest contends that "the State Court proceedings will involve parties, arguments, and issues different from those in this Federal action," specifically the "cause and origin of the fire and whether any acts or omissions of Upper Midwest and/or Mr. Salvato contributed to the same and, if so, the damages due to Westfield." Doc. 15 at 10. This is true as far as it goes, but recall that suits need not be identical to be parallel for *Colorado River* purposes so long as they present substantially the same issues. As explained above, the issues are substantially the same because the claims in this case have been

11

and will continue to be litigated as affirmative defenses in the state case. And if Upper Midwest is found not liable in state court, the only claim remaining here would concern Upper Midwest's seeking attorney fees and costs as damages. But nothing is stopping Upper Midwest from bringing as a counterclaim against Westfield and/or a third-party claim against DJK in state court the same claims it has brought here—nothing other than Upper Midwest's desire to have a federal judge examine the subrogation issue already squarely before the state judge in the guise of affirmative defenses.

Upper Midwest further contends that it "will not have a full opportunity to litigate the issues in" state court because DJK is not a party there "and, as a result, Upper Midwest cannot file a counterclaim against the DJK entities, serve interrogatories or production requests upon them, or cross-examine them as adverse parties." Doc. 15 at 11. This argument is frivolous, as DJK's absence from the state court suit is entirely Upper Midwest's doing. The Supreme Court of Illinois has stated that a "[t]hird-party action is favored" and has instructed "trial courts [to] be liberal in granting" leave to file third-party claims, *People v. Brockman*, 574 N.E.2d 626, 631 (Ill. 1991), and yet Upper Midwest has declined to file a third-party claim against DJK in state court. Upper Midwest cannot destroy parallelism by pointing to a situation for which it bears sole responsibility—particularly where it has already requested that DJK representatives testify in the state case, and where DJK has invited Upper Midwest to file a third-party action against it in state court. Doc. 17 at 4-5; *see Lumen Constr.*, 780 F.2d at 696 ("[T]here is no reason in theory why Villasenors and Cole could not be joined as parties in the state case. … If Lumen can no longer bring additional parties into the state case, it has only itself to blame.").

In addition, Upper Midwest can almost certainly obtain the same evidence in state court as it can in federal court, since the enforceability of the lease's subrogation provision is central to

both cases. *See Tyrer*, 456 F.3d at 752-53 (holding that two cases were parallel where they would "be resolved largely by reference to the same evidence"); *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (holding that because the federal court was required to "consider[] the same evidence and arguments" as did the state court, *Colorado River* abstention was proper); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 911 F.2d 993, 1005 (5th Cir. 1990) (noting that "[t]here is little to be gained from rehashing the same evidence in another forum."). True, if Upper Midwest prevails in state court on grounds other than DJK's alleged violation of the subrogation provision (such as Salvato incurring all liability in a personal capacity rather than as an agent of Upper Midwest), Upper Midwest likely could not use that victory offensively against DJK here. But *Colorado River* parallelism requires only that there be "a substantial likelihood," not a certainty, "that the state litigation will dispose of all claims presented in the federal case." *Huon*, 657 F.3d at 646 (internal quotation marks omitted); *see also Lumen Constr.*, 780 F.2d at 695 ("[O]ne can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court."). Because that standard is met here, the federal and state cases are parallel.

**B.**     **The *Colorado River* Factors**

The second step in the *Colorado River* analysis requires examining and balancing the following ten non-exclusive factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

13

*Tyrer*, 456 F.3d at 754 (internal quotation marks omitted). "[N]o one factor is necessarily determinative and the careful weighing of all factors is necessary to determine whether circumstances exist warranting abstention." *Freed*, 756 F.3d at 1018 (quoting *Colorado River*, 424 U.S. at 818) (internal quotation marks omitted); *see also Tyrer*, 456 F.3d at 754.

    *1. Whether the state has assumed jurisdiction over property*. The state court has not assumed jurisdiction over property, so this factor weighs against abstention.

    *2. The inconvenience of the federal forum.* The Circuit Court of DuPage County is in Wheaton, Illinois, which is within this court's geographical jurisdiction. This suggests that the federal forum is not inconvenient, which weighs against abstention.

    *3. The desirability of avoiding piecemeal litigation.* "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (internal quotation marks omitted). "Dual proceedings could involve what we have called a grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once." *Ibid*. (internal quotation marks omitted). Because the federal and state suits involve substantially the same parties and legal issues, and because both suits turn on the validity and enforceability of the lease's subrogation provision, proceeding simultaneously in both forums would ensure "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Caminiti*, 962 F.2d at 701. Simultaneous proceedings would also incent one or the other party to attempt to delay proceedings in one forum should the other forum appear more favorable. *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). This factor strongly favors abstention.

*4. The order in which jurisdiction was obtained by the concurrent forums.* This factor favors abstention, as Westfield filed the state suit on September 17, 2014, Doc. 1-2, and Upper Midwest did not file this suit until July 7, 2015, Doc. 1, over nine months later. *See Lumen Constr.*, 780 F.2d at 697 (holding that this factor favored abstention where the state case was filed five months before the federal case).

*5. The source of governing law, state or federal.* The source of the governing law here is state law, which favors abstention. *See Day*, 862 F.2d at 660 ("[A] state court's expertise in applying its own law favors a *Colorado River* stay.").

*6. The adequacy of state court action to protect the federal plaintiff's rights.* The state court is eminently competent to protect Upper Midwest's rights, which turn on state law. Although Upper Midwest (a Minnesota corporation) contends that proceeding in federal court "may protect it as an out-of-state party from potential prejudice in a local court," Doc. 15 at 13, *neither* principal party in state court is an Illinois resident: Westfield is an Ohio corporation, so it is not even clear in which direction an Illinois state court's (wholly speculative) prejudice would cut. Doc. 17 at 7. Whatever weight could be given to the abstract possibility of an Illinois state court's being prejudiced against a Minnesota corporation in favor of an Ohio corporation, the possibility is extraordinarily remote here. In fact, Salvato, Upper Midwest's co-defendant in the state case, is the only Illinois resident in the state case, meaning that whatever "local prejudice" applies would likely benefit Upper Midwest's side. *Ibid*. This factor favors abstention.

*7. The relative progress of state and federal proceedings.* There was an "absence of any proceedings in [this court], other than the filing of the complaint, prior to the motion to" dismiss or abstain. *Colorado River*, 424 U.S. at 820. By contrast, the state court has already heard and

15

denied a fully briefed motion to dismiss, dealt with affirmative defenses, and commenced discovery. Docs. 7-1, 7-2, 7-3, 7-4, 15-2. This factor favors abstention.

        *8. The presence or absence of concurrent jurisdiction.* All of Upper Midwest's claims in federal court arise under Illinois law, and Defendants would be susceptible to suit in Illinois court, so the eighth factor favors abstention. *Cf. Caminiti*, 962 F.2d at 702-03 (holding that the state court's lack of jurisdiction to hear a federal claim weighed against abstention).

        *9. The availability of removal.* This factor recognizes a policy against a federal court's hearing claims that are closely related to non-removable state proceedings. *See Day*, 862 F.2d at 659-60. The state court suit likely would have been non-removable under the forum defendant rule because diversity jurisdiction would have provided the only basis for removal and Salvato, a defendant in that suit, is an Illinois citizen. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000) (discussing the forum defendant rule). As a result, although abstention would delay or eliminate Upper Midwest's "opportunity to litigate in a federal forum—an opportunity to which it is entitled under 28 U.S.C. § 1332," *AXA Corporate Solutions*, 347 F.3d at 279, this factor nevertheless favors abstention because this federal suit is bound up with claims in the likely non-removable state case. *See Day*, 862 F.2d at 660 ("[R]elated removable claims should be decided in state court along with the non-removable claims.").

        *10. The vexatious or contrived nature of the federal claims.* There is no need to comment adversely on Upper Midwest's motives to conclude that, because its federal court claims closely track the affirmative defenses that it has asserted in state court and the

counterclaims and/or third-party claims it easily could have brought and still could bring, the federal suit is "vexatious" and "contrived" within the meaning of *Colorado River*. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) ("[T]he federal suit could be considered both vexatious and contrived. … [W]e see no reason why all claims and all parties could not have been, and still could not be, part of one suit."). That said, the fact that Upper Midwest declined to file third-party claims against DJK in state court while filing an essentially identical action in federal court strongly suggests that it has behaved vexatiously.

In sum, eight of the ten *Colorado River* factors—particularly the third, fourth, eighth, and tenth factors—favor abstention and provide the "exceptional circumstances" necessary to abstain under that doctrine. The only remaining question is whether the federal suit should be dismissed or stayed. The Seventh Circuit routinely holds that *Colorado River* should be implemented through a stay, not dismissal. *See Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811 (7th Cir. 2014) (noting that *Colorado River* abstention "ordinarily calls for a stay rather than dismissal"); *Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002). Accordingly, this suit is stayed pending resolution of the state court suit. When that suit concludes, any party may move this court to lift the stay and proceed with the federal case in a manner consistent with the state court's rulings and any applicable preclusion principles. *See Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) ("It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.").

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is denied, but its motion to stay under the *Colorado River* doctrine is granted. This case is stayed pending resolution of *Westfield Insurance Company as subrogee of DJK Real Estate Group, LLC v. Upper Midwest Sealcoat Manufacturing, LLC*, 2014 L 929 (Cir. Ct. DuPage Cnty., Ill. filed Aug. 28, 2014).

December 28, 2015

_____
United States District Judge